IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARK A. WHITE, | § | |
| TDCJ-CID NO.1242162, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-05-1360 |
| | § | |
| ASSISTANT WARDEN BURNS, *et al.*, | § | |
| Defendants. | § | |

OPINION ON DISMISSAL

Plaintiff Mark A. White, a state parolee, filed a complaint and a more definite statement, alleging violations of his civil rights under 42 U.S.C. § 1983. He seeks compensatory, nominal, and punitive damages, and injunctive and declaratory relief. (Docket Entry No.7). Plaintiff has been given leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. (Docket Entry No.5). Defendants have filed a motion for summary judgment (Docket Entry No.20), but plaintiff has not filed a response to the motion.

After a careful consideration of the pleadings, the entire record, and the applicable law, the Court will grant defendants' motion for summary judgment and dismiss this complaint with prejudice.

I. BACKGROUND

Plaintiff alleges that the following events precipitated the filing of the present civil rights complaint: In October 2004, plaintiff caught a cold after being exposed to inclement weather conditions. (Docket Entry No.6). On October 15, 2004, he submitted a sick call request and the following day, he went to the Goree Unit's medical department. (*Id.*). Plaintiff complained to medical staff of an ear problem because the hearing in his right ear had faltered. (*Id.*). Although

Nurse Patricia Freeman told him that his ear did not look healthy, she did not allow him to see a doctor as requested. Instead, she instructed him to take a low dosage of Sudafed and sent him back to his cell. (*Id.*). Three to four days later, plaintiff submitted another sick call request, complaining that the Sudafed was not effective. (*Id.*). On October 20, 2004, plaintiff returned to the medical department to seek treatment for his ear. Nurse Christina Stofferahn examined plaintiff's ear and told him that it looked ugly. She called Physician's Assistant Matthew Lopez to look at plaintiff's ears. (*Id.*). Lopez examined the ears and told plaintiff that his right ear canal looked infected and red with irritation. (*Id.*). Plaintiff did not see a doctor and was once again set back to his cell with a low dosage of Sudafed. (*Id.*). Plaintiff then complained to Assistant Warden Dorothy Burns via an I-60 and a Step 1 grievance. On November 5, 2004, plaintiff returned to the medical department, where he was again examined by P.A. Lopez. Plaintiff again complained of sinus congestion and severe pain and hearing loss in his right ear. Lopez ordered plaintiff a ten-day supply of antibiotics, which plaintiff was to pick up on November 8, 2004. (*Id.*). Plaintiff, however, received only a four day supply of the medicine and was not allowed to keep it on his person. (*Id.*). On November 10, plaintiff completed a Step 2 grievance. (*Id.*). On November 16, 2004, plaintiff's ear drum ruptured. (*Id.*). On November 20, 2004, plaintiff was taken to the Estelle Unit, where his hearing was tested. (*Id.*). Medical staff told plaintiff that his ears were fine. (*Id.*).

     Plaintiff was released to parole in late March, 2005. After filing the pending suit, plaintiff sought treatment for his right ear in April, 2005. A physician told plaintiff that his ear might require surgery and prescribed more antibiotics for an ear infection. (*Id.*). Plaintiff was transferred to Cobb County, Georgia in May, 2005. An ear, nose, and throat specialist removed a scab from plaintiff's eardrum and told him that the scab was from the rupture of the eardrum. (*Id.*).

Plaintiff seeks monetary and equitable relief from defendants on the ground that they denied him adequate medical attention in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. (Docket Entry No.7).

Defendants move for summary judgment on grounds that (1) they were not deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment; (2) they are entitled to qualified immunity; and, (3) plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment. (Docket Entry No.20).

II. STANDARD OF REVIEW

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992). Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

III. DISCUSSION

A. Eleventh Amendment Immunity

The Eleventh Amendment bars a suit in federal court by a citizen of a state against his own state or against a state agency or department.  *Hughes v. Savell*, 902 F.2d 376, 377-78 (5th Cir. 1990).  Eleventh Amendment immunity has a jurisdictional effect; it deprives a federal court of jurisdiction to hear a suit against a state.  *Warnock v. Pecos County, Tex.*, 88 F.3d 341, 342 (5th Cir. 1996).  This immunity extends to suits for monetary damages against state officials in their official capacity.  *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 609 n. 10 (2001) (holding "[o]nly States and state officers acting in their official capacity are immune from suits for damages in federal court").

Because plaintiff's claims against defendants in their official capacities as employees of the State of Texas are barred by the Eleventh Amendment*; see Will v. Michigan Dept of State Police*, 491 U.S. 58, 71 (1989) (suit not against official but state office); *Oliver v. Scott*, 276 F.3d 736, 742, 742 n. 5 (5th Cir. 2002); the Court lacks jurisdiction to consider such claims.  Accordingly, defendants are entitled to summary judgment on plaintiff's claims for monetary damages against them in their official capacities.

B. Qualified Immunity

Qualified immunity shields government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated."  *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Whether a defendant asserting qualified immunity may be personally liable turns on the objective

legal reasonableness of the defendant's actions assessed in light of clearly established law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1272 (5th Cir. 1992).

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations establish a constitutional violation, the court next considers whether the defendants' actions violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope*, 536 U.S. at 739 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 322 (5th Cir. 2002).

1. Respondeat Superior

Plaintiff fails to state facts that would show that defendant Burns, the Assistant Warden of the Goree Unit, was personally involved in the alleged constitutional violations as required under 42 U.S.C. § 1983. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (holding personal involvement in alleged constitutional deprivation is an essential element of a civil rights cause of action). Section 1983 does not create supervisory or *respondeat superior* liability. *See Alton v. Texas A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Individual officials may be liable only for implementing a policy that is "'itself a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'" *Oliver,* 276 F.3d at 742 (quoting *Grandstaff v. City of Borger*, 767

F.2d 161, 169, 170 (5th Cir. 1985)). Plaintiff's pleadings fail to identify specific policies or state specific facts to show that defendant Burns implemented a policy with respect to the allegedly unconstitutional acts of defendants Lopez, Stofferahn, and Freeman.

To the extent that plaintiff seeks monetary damages against defendant Burns in her individual capacity, he fails to show that defendant Burns is not entitled to qualified immunity.

2. Eighth Amendment

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The plaintiff must prove objectively that he was exposed to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The plaintiff must also show that prison officials acted or failed to act with deliberate indifference to that risk. *Id.* at 834. The deliberate indifference standard is a subjective inquiry; the plaintiff must establish that the prison officials were actually aware of the risk, yet consciously disregarded it. *Id.* at 837, 839; *Lawson v. Dallas County*, 286 F.3d 257, 262 (5th Cir. 2002); *see e.g., Norton v. Dimazana*, 122 F.3d 286, 291-92 (5th Cir. 1997) (holding an inmate's dissatisfaction with the medical treatment he receives does not mean that he suffered deliberate indifference); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991) (holding inmate's "disagreement with his medical treatment" not sufficient to show Eighth Amendment violation); *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979) (finding "[m]ere negligence, neglect or medical malpractice is insufficient" to show Eighth Amendment violation); *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Deliberate indifference to serious medical needs may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05. Delay in obtaining medical treatment does not constitute deliberate indifference unless it is shown that the delay resulted in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). "[F]acts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." *Id.* Assertions of inadvertent failure to provide medical care or negligent diagnosis, however, are insufficient to state a claim. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).

Plaintiff's medical records and his grievances do not reflect that defendants were aware that plaintiff had a serious ear condition that required treatment and examination by a physician or that they consciously disregarded his need for treatment. Instead, plaintiff's un-controverted medical records show that medical staff responded to his complaints of congestion, ear pain, and hearing loss.[1] (Docket Entry No.21, Exhibits A, B). Moreover, the un-controverted affidavit of Dr. Bobby

---

[1] Plaintiff's medical records show that on October 16, 2004, plaintiff was seen by Nurse Freeman for sinus drainage and congestion. (Docket Entry No.21, Exhibit A, pages 22-24). Plaintiff complained of a headache and nasal drainage. (*Id.*, page 22). Although her examination revealed nothing more than a clear nasal discharge, Freeman determined that plaintiff had an upper respiratory infection. (*Id.*). She gave plaintiff Sudafed to treat the congestion. (*Id.*, page 23). On October 18, 2004, plaintiff submitted a sick call request complaining of an earache and ear pain. (*Id.*, page 21). On October 20, 2004, Nurse Stofferahn noted that plaintiff complained of an ear ache, that the Sudafed was not working for sinus congestion, and that he wanted a different medication. (*Id.*, page 18). She noted that both ears had numerous scars from prior ear infections but she observed no drainage or odor. (*Id.*). She observed redness in his right ear canal, which she attributed to scratching. (*Id.*). Stofferahn requested that P.A. Lopez examine plaintiff. Lopez determined that plaintiff was not taking the Sudafed correctly and advised him to keep his fingers out of his ears. (*Id.*). Lopez reissued the Sudafed and explained to plaintiff how to take the medication. (*Id.*).

Plaintiff filed a Step 1 grievance on October 26, 2004, complaining that Lopez and Stofferahn had

M. Vincent, defendants' medical expert, reflects that plaintiff received supportive, responsive, adequate, and appropriate care for his medical needs. (*Id.*, Exhibit B). Plaintiff's medical records do not show that his ear drum ruptured on November 14, 2004, or that the condition for which he was treated upon his release from TDCJ was related to the medical conditions he allegedly suffered in October and November of 2004, while incarcerated on the Goree Unit of TDCJ-CID. (*Id.*).

Accordingly, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims. Plaintiff is not entitled to nominal, compensatory, or punitive damages.

## C. Equitable Relief

Plaintiff is no longer incarcerated in the Goree Unit of TDCJ-CID. Therefore, he no longer has a live controversy with respect to his Eighth claims that would entitle him to injunctive or declaratory relief as an inmate. *See Adams v. McIlhany*, 764 F.2d 294, 299 (5th Cir. 1985); *see also Herman v. Holiday*, 238 F.3d 660, 664-65 (5th Cir. 2001). Because he has no standing to pursue injunctive or declaratory relief in federal court, his claims for equitable relief will be dismissed.

---

not provided the appropriate care for his ear ache. (Docket Entry No.1, page 8). Assistant Warden Burns responded on November 8, 2004, that plaintiff would be scheduled with a provider who would address his hearing loss complaint. (*Id.*).

On November 5, 2004, plaintiff was seen in the clinic complaining of continued congestion and hearing loss. (Docket Entry No.21, Exhibit A, page 17). He again complained that the Sudafed was not working. (*Id.*). P.A. Lopez observed some scarring of the eardrums and some redness in the right ear canal. He also noted that plaintiff's tympanic membranes were pearly grey. (*Id.*). Lopez referred plaintiff for an audiogram, re-issued more Sudafed and prescribed an antibiotic. (*Id.*, page 18).

Plaintiff filed a Step 2 grievance on November 10, 2004, complaining that he had not been seen by a licensed physician for his ear and that P.A. Lopez lacked the authority to prescribe an antibiotic. (Docket Entry No.1, page 6). TDCJ-CID's response to the grievance on December 10, 2004, reflects plaintiff's condition was evaluated and treated in a timely manner for his complaints. (*Id.*).

Plaintiff's hearing examination on November 22, 2004, revealed that his hearing was normal. (Docket Entry No.21, Exhibit A, pages 8-9, 13, 14-15, Exhibit B, page 5). Plaintiff was seen on November 26, 27, and 28, 2004 for eye complaints. (*Id.*, Exhibit A, pages 13-, Exhibit B, page 5).

IV. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1. Defendants' motion for summary judgment (Docket Entry No.20) is GRANTED.

2. Plaintiff's claims against all defendants are DENIED.

3. Plaintiff's complaint is DISMISSED with prejudice.

4. All pending motions, if any, are DENIED.

The Clerk will provide copies to plaintiff and defendants, and to the TDCJ-CID Office of the General Counsel, P.O. Box 13084, Capitol Station, Austin, Texas 78711, Fax: 512-2159.

It is so ORDERED.

Signed at Houston, Texas, on this 8th day of January, 2007.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE